1  KAMALA D. HARRIS
   Attorney General of California
2  WILLIAM C. KWONG
   Supervising Deputy Attorney General
3  JANE B. MACKIE
   Deputy Attorney General
4  State Bar No. 288380
    455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
    Telephone:  (415) 703-5951
6    Fax:  (415) 703-5843
    E-mail:  Jane.Mackie@doj.ca.gov
7  *Attorneys for Defendant*
   *R. Cavagnolo*

8

                    IN THE UNITED STATES DISTRICT COURT
9
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
                          SAN FRANCISCO DIVISION
11

12

13  **KEVIN DEROI SAWYER,**                Case No. 15-cv-00220-JD

14                          Plaintiff,

15       v.                               **NOTICE OF MOTION AND
                                          DEFENDANT CAVAGNOLO'S MOTION
16  **KEVIN R. CHAPPELL, et al.,**         FOR SUMMARY JUDGMENT;
                                          MEMORANDUM OF POINTS AND
17                                         AUTHORITIES IN SUPPORT**
                            Defendants.
18                                        Judge:      The Honorable James Donato
                                          Action Filed:  1/15/2015
19

20       **TO PLAINTIFF KEVIN DEROI SAWYER, PRO SE:**

21       **PLEASE TAKE NOTICE** that Defendant Cavagnolo moves this Court for summary

22  judgment under Federal Rule of Civil Procedure 56 because there is no genuine issue as to any

23  material fact, Defendant Cavagnolo is entitled to qualified immunity, and Defendant Cavagnolo is

24  entitled to judgment as a matter of law.  This motion is based on this notice of motion and motion,

25  the points and authorities below, the declaration of R. Cavagnolo with attached exhibits, and all

26  pleadings, exhibits, and papers on file, and any other matter properly before this Court.

27  / / /

28  / / /

1

**TABLE OF CONTENTS**

2

**Page**

3
Memorandum of Points and Authorities ...................................................................................... 1

4

Introduction ................................................................................................................................. 1

Statement of the Case ................................................................................................................. 1

5

Statement of Facts ...................................................................................................................... 2

6

Legal Standard ........................................................................................................................... 4

Argument .................................................................................................................................... 5

7

       I.      Cavagnolo did not retaliate against Sawyer, and Sawyer has not raised a

8

              genuine issue of fact. ............................................................................................. 5

9

            A.     Cavagnolo took no adverse action against Sawyer. ................................... 6

            B.     No adverse action was taken by Cavagnolo because of Sawyer's

10

                 grievance. ................................................................................................... 6

11

            C.     Cavagnolo's decision not to return BGF-related materials advanced

                 a legitimate correctional goal. .................................................................... 7

12

       II.     The confiscation of Sawyer's materials was not racially motivated and

              Sawyer has raised no genuine issue of fact on the matter. .................................... 8

13

       III.    Cavagnolo is entitled to qualified immunity. ....................................................... 9

14

            A.     Cavagnolo is entitled to qualified immunity on Sawyer's retaliation

                 claim. ........................................................................................................ 10

15

            B.     Cavagnolo is entitled to qualified immunity on Sawyer's Equal

                 Protection claim. ...................................................................................... 11

16

Conclusion ............................................................................................................................... 12

17

18

19

20

21

22

23

24

25

26

27

28

i

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) ...................................................................................................................4

5

6

*Bruce v. Ylst*
   351 F.3d 1283 (9th Cir. 2003) ............................................................................................ *passim*

7

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) ................................................................................................................4, 5

8

9

*Hamby v. Hammond*
   821 F.3d 1085 (9th Cir. 2016.) ...........................................................................................10, 11

10

11

*Hunter v. Bryant*
   502 U.S. 224 (1991) .................................................................................................................10

12

*Malley v. Briggs*
   475 U.S. 335 (1986) .................................................................................................................10

13

14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
   475 U.S. 574 (1986) ...................................................................................................................5

15

16

*Mullenix v. Luna*
   136 S.Ct. 305 (2015) ................................................................................................................10

17

18

*Pearson v. Callahan*
   555 U.S. 223 (2009) ..............................................................................................................9, 10

19

*Pratt v. Rowland*
   65 F.3d 802 (9th Cir. 1995) ....................................................................................................5, 7

20

21

*Rhodes v. Robinson*
   408 F.3d 599 (9th Cir. 2004) .....................................................................................................5

22

23

*Saucier v. Katz*
   533 U.S. 194 (2001) ..............................................................................................................9, 10

24

*Serrano v. Francis*
   345 F.3d 1071 (9th Cir. 2003) ...................................................................................................8

25

26

*Shakur v. Schriro*
   514 F.3d 878 (9th Cir. 2008) .....................................................................................................8

27

*Spain v. Rushen*
   883 F.2d 712 (9th Cir. 1989) .....................................................................................................3

28

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

**STATUTES**

4

United States Code, Title 28
§ 1915A(a) ....................................................................................................................2

5

United States Code, Title 42
§ 1983..........................................................................................................................1, 2

6

7

**CONSTITUTIONAL PROVISIONS**

8

First Amendment.................................................................................................1, 2, 5, 10

9

Fourteenth Amendment...............................................................................................2, 8

10

**COURT RULES**

11

Federal Rules of Civil Procedure
Rule 56 ......................................................................................................................1, 4

12

13

**OTHER AUTHORITIES**

14

California Code of Regulations, Title 15
§ 3190(d) ........................................................................................................................1
§ 3378 (2011) ..................................................................................................................2
§ 3378 (c)(8)(C) ..............................................................................................................2

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Not. Mot. & Def. Cavagnolo's Mot. for Summary Judgment; Memo P&A (15-cv-00220-JD)

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff Kevin D. Sawyer, an inmate at San Quentin State Prison, brings this 42 U.S.C. § 1983 action against Defendant R. Cavagnolo, a correctional sergeant.  Sawyer alleges that Sergeant Cavagnolo confiscated papers that included quotes, research material, and other written material that Cavagnolo deemed indicia of prison gang affiliation.  Sawyer alleges that by confiscating Sawyer's written materials, Sergeant Cavagnolo retaliated against Sawyer for exercising his First Amendment rights, in violation of the First Amendment.  Sawyer also alleges that Sergeant Cavagnolo violated Sawyer's right to Equal Protection by singling Sawyer out on the basis of his race.

Sergeant Cavagnolo moves for summary judgment on the following grounds: (1) Sawyer cannot raise an issue of triable fact as to whether Cavagnolo took an adverse action against him because Cavagnolo did not assign Sawyer any gang validation points and Cavagnolo's refusal to return to Sawyer possible gang indicia is not an adverse action; (2) Sawyer cannot raise an issue of triable fact as to whether Cavagnolo confiscated his materials in retaliation because Sawyer filed his grievance after, not before, the materials were confiscated; (3) there is no genuine issue of fact whether confiscation of written materials related to the Black Guerrilla Family prison gang furthered a legitimate correctional purpose; (4) Sawyer cannot raise an issue of triable fact as to whether Cavagnolo's decision not to return written materials was racially motivated; and (5) Cavagnolo is entitled to qualified immunity.

**STATEMENT OF THE CASE**

On November 23, 2011, Plaintiff Kevin D. Sawyer arrived at San Quentin Prison from Folsom State Prison.  (Am. Compl. ¶ 22.)  Sawyer's property arrived a few weeks after he did, and San Quentin correctional staff searched Sawyer's property in accordance with California Department of Corrections and Rehabilitation (CDCR) policy.  Cal. Code Regs. tit. 15, § 3190(d); (Am. Compl. ¶¶ 22–23).  Corrections officials confiscated certain written materials of Sawyer's. Sergeant Cavagnolo reviewed the materials and declined to return some of the materials,

1

1 | including quotes, research material, and other writing, that Cavagnolo deemed to be possible gang

2 | indicia. (*See, e.g.*, Am. Compl. ¶ 23.)

3 |      Sawyer sued Sergeant Cavagnolo and other prison officials under § 1983 for violation of

4 | the First, Fourth, and Fourteenth Amendments, and for violation of federal copyright law.  The

5 | Court dismissed Sawyer's complaint with leave to amend and then screened Sawyer's amended

6 | complaint under 28 U.S.C. § 1915A(a). (Order of Service, ECF No. 11.)  The Court found that,

7 | against Sergeant Cavagnolo, Sawyer stated claims for retaliation in violation of the First

8 | Amendment and for denial of equal protection in violation of the Fourteenth Amendment.  (Order

9 | of Service at 4.)[1]

10 | **STATEMENT OF FACTS**

11 |      Sawyer arrived at San Quentin on November 23, 2011, and his property arrived the

12 | following month, in December 2011.  (Am. Compl. ¶¶ 22, 23.)  At that time, Sergeant Cavagnolo

13 | was working at the prison as a Security Threat Group Investigator, also known as an Assistant

14 | Institutional Gang Investigator.  (Declaration of Defendant Cavagnolo in Support of Motion for

15 | Summary Judgment ("Cavagnolo Decl.") ¶ 5.)  San Quentin's gang investigators were tasked

16 | with investigating gang activity. (*Id*., ¶ 6.)  One responsibility of gang investigators was to

17 | "validate" inmates as being involved with a gang.  Cal. Code Regs. tit. 15, § 3378 (2011);

18 | (Cavagnolo Decl. ¶ 8.)  To do so, an investigator would document "source items" that serve as

19 | indicia of gang membership, including "[w]ritten material [including] [a]ny material or

20 | documents evidencing gang activity such as the membership or enemy lists, constitutions,

21 | organizational structures, codes, training material, etc., of specific gangs." Cal. Code Regs. tit 15,

22 | § 3378 (c)(8)(C).

23 |      As a gang investigator, Sergeant Cavagnolo was not personally responsible for screening all

24 | inmate property on its arrival.  (*Id*., ¶¶ 25–26, 28.).  However, Sergeant Cavagnolo and other gang

25 | specialists trained staff at the prison reception center to screen inmates' property, including

26 |      [1] To date, it appears that no other defendants have been served in this action.  The Attorney General's Office does not represent any other defendants at this time and makes no

27 | appearance on their behalf.

28 |

2

1    written materials, for possible indicia of gang membership.  (Cavagnolo Decl. ¶ 26.)  Prison

2    officials culled written materials from Sawyer's property on December 7, 2011.  (Am. Compl.

3    ¶23); Cavagnolo Decl. ¶ 29.)  After reception staff pulled the materials, Sergeant Cavagnolo kept

4    the written materials in a file in his possession to review for possible indicia of gang membership.

5    (Cavagnolo Decl. ¶ 31, 34.)  Sergeant Cavagnolo did not immediately have the opportunity to

6    review Sawyer's file.  (*Id.*, ¶ 32.)  Sergeant Cavagnolo did not withhold Sawyer's file from

7    Sawyer as a punitive measure.  (*Id.*, ¶ 34.)

8           After Sawyer filed an inmate appeal (also known as a form 602 or grievance) and the

9    inmate appeals office processed Sawyer's inmate appeal, Sergeant Cavagnolo reviewed the

10   materials that had been culled from Sawyer's property and determined that some of the materials

11   were related to the Black Guerrilla Family prison gang (BGF).  (Cavagnolo Decl. ¶ 39–40.)  The

12   BGF is a violent and dangerous prison gang that was cofounded by George Jackson at San

13   Quentin State Prison.  (Cavagnolo Decl. ¶¶ 16, 19.)

14          The BGF is still active in San Quentin State Prison.  (Cavagnolo Decl. ¶ 17.)  BGF

15   members are a threat to the safety and security of other inmates and staff at San Quentin.  (*Id.* ¶

16   18.)  Their influence over other groups in the prison, and their ability and willingness to assault

17   staff and inmates on behalf of the gang, make them extremely dangerous.  (*Id.*)

18          George Jackson is revered by the BGF as its founder and greatest theoretician, and for his

19   acts of violence against correctional officers.  *Spain v. Rushen*, 883 F.2d 712, 713-14 (9th Cir.

20   1989); (Cavagnolo Decl. ¶ 19.)  George Jackson's assault and murder of correctional officers at

21   Soledad and San Quentin are celebrated by the BGF.  (Cavagnolo Decl. ¶ 19.)

22          During the annual, month-long BGF celebration called Black August, George and Jonathan

23   Jackson's deaths are commemorated by the BGF.  (*Id.* ¶ 20.)  Historically, Black August has also

24   been a time when BGF gang members were encouraged and expected to retaliate against

25   correctional officers for the deaths of George Jackson, Jonathan Jackson, and other past leaders of

26   the BGF prison gang.  (*Id.*)

27   / / /

28   / / /

3

1    Because George Jackson was a founder of the BGF, if an inmate possesses and displays

2    photographs, drawings, or tattoos of George Jackson, he could be perceived to be a member of the

3    BGF by other inmates, and might also be targeted for violence by enemies of the BGF.  (*Id.* ¶ 21.)

4    After screening Sawyer's materials, Sergeant Cavagnolo and Officer McDonald met with

5    Sawyer on July 10, 2012.  (Am. Compl. ¶¶ 43, 60); (Cavagnolo Decl. ¶ 38.)  At that meeting,

6    Sergeant Cavagnolo and the other officers returned non-BGF-related written materials to Sawyer.

7    (Am. Compl. ¶ 43).  Sergeant Cavagnolo told Sawyer that he could not return the possible BGF

8    indicia, including Black August- and George Jackson-related materials.  (Cavagnolo Decl. ¶¶ 41–

9    42.)

10    Based on his assessment that Sawyer was not affiliated with a gang, Sergeant Cavagnolo

11    determined that he would not further investigate Sawyer for gang involvement.  (Cavagnolo Decl.

12    ¶ 45.)  Because Sergeant Cavagnolo concluded that Sawyer was not a BGF member, Cavagnolo

13    did not begin the process by which corrections officers validate an inmate's gang affiliation.

14    (Cavagnolo Decl. ¶¶ 45, 47, 50, 52.)  Gang validation has repercussions for inmates, and as of

15    2011, validation required submission of forms and documents that identified the items used to

16    identify an inmate's gang affiliation and would assign "points" for validation..  (Cavagnolo Decl.

17    ¶ 49.)  Sergeant Cavagnolo did not complete any such forms for Sawyer.  (Cavagnolo Decl. ¶¶

18    50, 51.)  No points have been assigned to Sawyer for his possession of the written material that

19    Sergeant Cavagnolo declined to return to Sawyer.  (Cavagnolo Decl. ¶ 53.)

20                                            **LEGAL STANDARD**

21    Summary judgment is appropriate "where there is no genuine issue as to any material fact,

22    and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts

23    are those that may affect the litigation's outcome.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

24    248 (1986).  A dispute or issue concerning a material fact is genuine if there is sufficient evidence

25    for a reasonable jury to return a verdict for the nonmoving party.  *Id*. at 249.  Entry of summary

26    judgment is mandated when the responding party "fails to make a showing sufficient to establish

27    the existence of an element essential to that party's case, and on which that party will bear the

28    burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the moving

4

1  party has the burden of proof on an issue at trial, he or she must affirmatively demonstrate that no

2  reasonable trier of fact could find other than for the moving party. *Id.* at 322–23. On an issue for

3  which the opposing party will have the burden of proof at trial, the moving party can prevail

4  merely by noting the absence of evidence supporting the nonmoving party's case. *Id.* at 325. All

5  reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita Elec. Indus.*

6  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ARGUMENT**

8  **I.    CAVAGNOLO DID NOT RETALIATE AGAINST SAWYER, AND SAWYER HAS NOT
       RAISED A GENUINE ISSUE OF FACT.**

9

10  Sawyer alleges that Cavagnolo retaliated against him in violation of the First Amendment.

11  In the prison context, "a viable claim of First Amendment retaliation entails five basic elements:

12  (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3)

13  that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

14  Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

15  *Rhodes v. Robinson*, 408 F.3d 599, 567–68 (9th Cir. 2004). "The plaintiff alleging retaliation

16  bears the burden of pleading and proving the absence of legitimate correctional goals for the

17  conduct of which he complains." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). A

18  correctional goal is not legitimate if, because of a retaliatory motive, it is used as a ruse or cover

19  to punish inmates. *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).

20  Sawyer has not pleaded facts to show that Cavagnolo took any adverse action in response to

21  protected conduct because Sergeant Cavagnolo did not penalize Sawyer in any manner. Sawyer's

22  materials were confiscated before Sawyer filed a grievance, and the filing of that grievance is the

23  only protected conduct that Sawyer alleges he performed. Even if the confiscation of Sawyer's

24  materials before he engaged in protected conduct was, somehow, a preemptive adverse action,

25  Sawyer has not raised a genuine issue as to whether the confiscation of gang indicia reasonably

26  advanced a legitimate correctional goal.

27  / / /

28  / / /

5

1

**A.    Cavagnolo took no adverse action against Sawyer.**

2

3     Sawyer alleges that Sergeant Cavagnolo took adverse action against him by initiating gang

4  validation efforts.  (Am. Compl. ¶48.)  Efforts to validate, or the validation of, an inmate may

5  constitute adverse action against an inmate.  *See Bruce v. Ylst*, *supra*, 351 F.3d 1283.  However,

6  Sergeant Cavagnolo made no efforts to validate Sawyer.  (Cavagnolo Decl. ¶¶ 44–45, 49–53.)

7  Indeed, no gang validation points have been assigned to Sawyer.  (*Id*., ¶ 53.)

8     Therefore, the only possible adverse action taken by Sergeant Cavagnolo was the

9  confiscation of Sawyer's written materials.  But Sawyer's written materials were confiscated

10  before Sawyer filed a grievance.  Thus, the confiscation could not have been in retaliation for

11  Sawyer's grievance.  Moreover, after Sawyer filed his grievance, Sergeant Cavagnolo returned

12  the non-BGF-related materials that Sawyer could safely possess without compromising

13  institutional security.  (Am. Compl. ¶ 43.)  This fact further demonstrates that Sergeant

14  Cavagnolo was not attempting to retaliate because he returned all of the materials that did not

15  implicate security concerns.

16

**B.    No adverse action was taken by Cavagnolo because of Sawyer's grievance.**

17     Assuming that Sawyer could raise a genuine issue of fact as to whether Sergeant

18  Cavagnolo's decision not to return BGF-related written materials to Sawyer was an adverse

19  action, Sawyer has not raised a genuine issue of fact as to whether Cavagnolo kept the materials

20  *because* Sawyer had filed a grievance.  The evidence necessary to raise a genuine issue of fact as

21  to the nexus between an adverse action and the filing of a grievance in the retaliation context is

22  discussed in *Bruce v. Ylst, supra*.  There, inmate-plaintiff Bruce was investigated as a possible

23  member of BGF at three prisons, and IGIs twice determined that the evidence was insufficient to

24  validate Bruce as a BGF member.  *Ylst*, 351 F.3d at 1286.  According to inmate-plaintiff Bruce's

25  allegations, the third time he was investigated, a prison official told Bruce that Bruce would be

26  validated because Bruce had filed grievances.  *Id*. at 1287.  Bruce was subsequently validated as a

27  gang member, and he brought suit for retaliation.  *Id*.  The district court granted summary

28  judgment to defendants, holding that the gang validation reasonably advanced a legitimate

6

1   correctional purpose, and the Ninth Circuit reversed. *Id.* That court held that Bruce had put forth

2   some evidence of a retaliatory motive because Bruce had alleged that he was told the validation

3   was intended to "make an example out of him" to discourage grievances; Bruce's validation

4   followed shortly after his filing of grievances; and investigators used stale evidence from prior

5   investigations to validate Bruce. *Id.* at 1288–89. The Ninth Circuit held that this evidence of a

6   retaliatory motive was sufficient to raise a question of fact as to whether Bruce was validated

7   *because* Bruce had filed grievances.

8       No such issue of fact exists here. Sergeant Cavagnolo does not dispute that after Sawyer's

9   materials were confiscated, Sawyer filed a grievance, and Cavagnolo returned some, but not all,

10  of Sawyer's confiscated written material. The confiscation of materials predated Sawyer's filing

11  of a grievance. Sawyer has not alleged any facts that suggest that Sawyer's filing of a grievance

12  motivated Sergeant Cavagnolo to return some but not all of Sawyer's materials. To the contrary,

13  Sergeant Cavagnolo chose not to pursue gang validation against Sawyer because Cavagnolo

14  concluded that Sawyer was not involved with the BGF. (Cavagnolo Decl. ¶ 45.) This fact further

15  demonstrates that Sergeant Cavagnolo was not motivated by any retaliatory motive.

16      **C.    Cavagnolo's decision not to return BGF-related materials advanced a
             legitimate correctional goal.**

17

18      Finally, to the extent that Sergeant Cavagnolo's decision not to return BGF-related

19  materials to Sawyer could be construed as an adverse action, Sawyer has not demonstrated a

20  genuine issue of fact as to whether Cavagnolo's decision advanced a legitimate correctional goal.

21  Indeed, it is Sawyer's burden to plead and prove that Sergeant Cavagnolo's action did not

22  advance such a goal. *Pratt*, 65 F.3d at 806. Here, Sawyer has alleged no facts and offered no

23  evidence to suggest that confiscation of BGF-related materials did not advance a legitimate

24  correctional goal.

25      "Prisons have a legitimate penological interest in stopping prison gang activity." *Bruce*,

26  351 F.3d at 1289. Though the "gang validation procedure may not be used as a ruse," *id.*, here,

27  no gang validation procedures were initiated and the allegations show that Sergeant Cavagnolo

28  was not operating under a ruse, because the materials that Cavagnolo kept had already been

                                          7

1    confiscated.  (Cavagnolo Decl. ¶ 29.)  Therefore, Sergeant Cavagnolo came into possession of the

2    relevant materials before any possible retaliatory motive could have arisen, and the initial

3    confiscation could not have been a ruse invoked to retaliate for an as-yet-nonexistent grievance.

4    Further, Sawyer and Sergeant Cavagnolo do not dispute that some of Sawyer's materials were

5    returned, indicating that Cavagnolo reviewed the materials and only withheld gang-related

6    materials rather than simply withholding all of the materials as retaliation or punishment.

7          Sergeant Cavagnolo kept Sawyer's possible gang indicia in his possession because he

8    determined that doing so was necessary for institutional security.  (Cavagnolo Decl. ¶ 40.)

9    Materials like those found in Sawyer's possession are used by the BGF for training and

10   recruitment, and could lead other inmates to assume that their possessor was BGF-involved.

11   (Cavagnolo Decl. ¶¶ 40, 56–57.)  Sawyer has not pleaded any facts that show otherwise.

12         Because Sawyer has not raised a genuine issue of fact as to whether Sergeant Cavagnolo

13   took an adverse action against him, whether any action taken was because Sawyer filed a

14   grievance, or whether the confiscation of possible BGF indicia advanced a legitimate correctional

15   goal, Cavagnolo requests the Court to enter summary judgment on this claim.

16   **II.    THE CONFISCATION OF SAWYER'S MATERIALS WAS NOT RACIALLY MOTIVATED**
         **AND SAWYER HAS RAISED NO GENUINE ISSUE OF FACT ON THE MATTER.**

17

18         Sawyer alleges that Sergeant Cavagnolo's refusal to return certain written materials

19   associated with BGF violated the Fourteenth Amendment's Equal Protection Clause,[2] because,

20   Sawyer alleges, Cavagnolo's actions were motivated by Sawyer's race.  "The Equal Protection

21   Clause requires the State to treat all similarly situated people equally." *Shakur v. Schriro*, 514

22   F.3d 878, 891 (9th Cir. 2008).  To survive summary judgment on the claim that Sawyer was not

23   treated equally on the basis of his race, Sawyer must "must produce evidence sufficient to permit

24   a reasonable trier of fact to find by a preponderance of the evidence that the decision was racially

25   motivated." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).  That he cannot do.

26         Sawyer has not alleged any facts to show that Sergeant Cavagnolo did not treat inmates

27         [2] "No State shall . . . deny to any person within its jurisdiction the equal protection of its
     laws."  U.S. Const. amend. XIV, § 1

28

8

1  similarly situated to Sawyer equally.  To the contrary, Sawyer concedes that officers were entitled

2  to search his property upon its arrival at San Quentin and does not dispute that all inmates'

3  property was equally subject to such searches.  (Am. Compl. ¶46.)  Sawyer alleges that he was

4  treated differently on the basis of his race, but does not allege that inmates of other races who

5  arrived at San Quentin were entitled to possess written materials that could be used as indicia of

6  affiliation with BGF or any other gangs.

7          Sawyer's only apparent bases for asserting that Sergeant Cavagnolo's acts were racially

8  motivated are that (1) Sawyer is black, and (2) the authors of some of the materials are black.

9  (Am. Compl. ¶ 66.)  Sawyer also alleges that a racial motivation can be deduced from Sergeant

10  Cavagnolo's failure to address the fact that Sawyer had quotes from Hitler in his materials or

11  books written by authors of European descent.  (Am. Compl. ¶ 68.)  Sawyer is mistaken, because

12  his possession of books by white authors, and of notes about white supremacist writings, has no

13  bearing on his possession of gang indicia.  Sawyer has not alleged that similarly situated inmates

14  of other races are allowed to possess gang indicia, as long as they read the works of diverse and

15  ideologically divisive authors, nor can he.  The materials at issue were confiscated because of

16  their use by the BGF, and the race of other authors in Sawyer's library has no bearing on the

17  decision to review his materials.

18          Sergeant Cavagnolo did not confiscate possible BGF indicia from Sawyer because of

19  Sawyer's race, and Sawyer has not raised a genuine issue of fact as to whether he was treated

20  differently from similarly situated inmates.  Sergeant Cavagnolo respectfully requests that the

21  Court enter judgment in his favor on this claim.

22  **III.   CAVAGNOLO IS ENTITLED TO QUALIFIED IMMUNITY.**

23          Sergeant Cavagnolo is entitled to qualified immunity for his decision not to return to

24  Sawyer materials that Cavagnolo determined could be used to indicate affiliation with a gang.

25  Qualified immunity shields prison officials from liability for civil damages based on conduct that

26  "does not violate clearly established statutory or constitutional rights of which a reasonable

27  person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

28          Qualified immunity is a two-part inquiry.  The first question is whether, in the light most

9

1   favorable to the plaintiff, the facts alleged establish a constitutional violation.  *Saucier v. Katz*,

2   533 U.S. 194, 201 (2001).  If they do not, then the inquiry ends and the defendants are entitled to

3   qualified immunity.  *See id.*  If such a violation is found, then the question becomes whether the

4   violated right was "clearly established," meaning that the contours of the right were sufficiently

5   clear that a reasonable official would understand that what he is doing violates that right.  *Id.*

6          Whether the contours of a right were sufficiently clear is a fact-specific inquiry, and the

7   "relevant inquiry is whether existing precedent placed the conclusion that [a defendant] acted

8   unreasonably in these circumstances beyond debate."  *Mullenix v. Luna*, 136 S.Ct. 305, 309

9   (2015).  The qualified-immunity doctrine protects "all but the plainly incompetent or those who

10  knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  And it applies equally

11  to mistaken judgments of law and fact.  *Pearson*, 555 U.S. at 231.

12         Qualified immunity is not a mere defense to liability; it is immunity from suit, and its

13  application should be decided at the earliest possible stage of the litigation.  *See Hunter v. Bryant*,

14  502 U.S. 224, 227-28 (1991).  "The farther afield existing precedent lies from the case under

15  review, the more likely it will be that officials' acts will fall within that vast zone of conduct that

16  is perhaps regrettable but is at least arguably constitutional."  *Hamby v. Hammond*, 821 F.3d

17  1085, 1095 (9th Cir. 2016.)  Further, the "fact-specific, highly contextualized nature of the

18  inquiry does not depend on which particularly constitutional right a given plaintiff claims the

19  officials have violated."  *Id*. at 1091.

20         **A.     Cavagnolo is entitled to qualified immunity on Sawyer's retaliation claim.**

21         As discussed above, Sergeant Cavagnolo did not violate Sawyer's First Amendment right to

22  seek redress without retaliation, and Cavagnolo is entitled to qualified immunity on that basis.

23  But even if Sergeant Cavagnolo's conduct violated Sawyer's constitutional rights, Cavagnolo is

24  entitled to qualified immunity because he did not violate clearly established rights of which a

25  reasonable person would have known.

26         In *Bruce v. Ylst, supra*, the Ninth Circuit held that "the prohibition against retaliatory

27  punishment is clearly established law . . . for qualified immunity purposes."  *Bruce*, 351 F.3d at

28  1290.  However, qualified immunity law now requires that precedent must have placed the

10

1    statutory or constitutional question "beyond debate.'"  *Mullenix v. Luna*, 136 S. Ct. 305, 308

2    (2015) (per curiam).  This means that courts must not frame the issue as whether defendants

3    should have known that unconstitutional conduct was barred, but whether clearly established law

4    provided that a defendant's conduct in a particular context would violate the law; it is a fact-

5    specific, highly contextualized inquiry.  *Hamby*, 821 F.3d at 1091.

6         Here, Sergeant Cavagnolo is entitled to qualified immunity because no clearly established

7    law provided that confiscation of gang indicia constituted an adverse action.  Indeed, by declining

8    to pursue gang validation, a defendant in Cavagnolo's position could have believed that he was

9    omitting to take an adverse action, on the authority of *Bruce v. Ylst*, where only the gang

10   validation of the plaintiff was considered an adverse action.  351 F.3d at 1288.

11        Sergeant Cavagnolo is further entitled to qualified immunity because no clearly established

12   law of which a reasonable person would have known established that, following the filing of a

13   grievance, a prison official could not decline to return to an inmate materials which had been

14   confiscated as possible gang indicia.

15        Sergeant Cavagnolo is entitled to qualified immunity on Sawyer's claim of retaliation.

16   **B.    Cavagnolo is entitled to qualified immunity on Sawyer's equal protection
          claim.**

17

18        Sergeant Cavagnolo did not violate Sawyer's right to equal protection, and is entitled to

19   qualified immunity on that basis.  Nor, if Sergeant Cavagnolo did violate Sawyer's right, did

20   Cavagnolo violate clearly established law of which of reasonable person would have known.

21        Sawyer identifies no authority for the proposition that a prison official may not confiscate

22   materials that the official believes may be gang indicia.  The gravamen of Sawyer's allegations is

23   that because Sawyer is black, and Sawyer read works by black authors as well as works by many

24   other races, Sergeant Cavagnolo's review of Sawyer's confiscated materials was improper.  This

25   has no basis in law, and Sergeant Cavagnolo, in reviewing Sawyer's materials for gang indicia,

26   was not violating equal-protection rights of which a reasonable person would have known.

27   Sergeant Cavagnolo is therefore entitled to qualified immunity.

28   / / /

1

**CONCLUSION**

Some of Sawyer's written materials were confiscated following a routine search after

inmate transfer.  Once Sawyer filed a grievance, Sergeant Cavagnolo reviewed the materials and

decided that some of the materials could be returned to Sawyer.  That is the sum of the allegations

and the evidence in this action, and it does not give rise to a genuine issue of fact.  Because there

is no genuine issue of fact, and because Sergeant Cavagnolo is entitled to qualified immunity, he

respectfully requests the Court to enter judgment on his behalf.

Dated:  October 31, 2016                                        Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
WILLIAM C. KWONG
Supervising Deputy Attorney General



*/s/ Jane B. Mackie*
JANE B. MACKIE
Deputy Attorney General
*Attorneys for Defendant*
*R. Cavagnolo*

SF2016400567
20910827.doc

12

Not. Mot. & Def. Cavagnolo's  Mot. for Summary Judgment; Memo P&A (15-cv-00220-JD)

# CERTIFICATE OF SERVICE

Case Name:   **Kevin Sawyer v. K. Chappell, et al.**        No.   **15-cv-00220-JD**

I hereby certify that on October 31, 2016, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF MOTION AND DEFENDANT CAVAGNOLO'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;**

**DECLARATION OF DEFENDANT CAVAGNOLO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT with EXHIBITS A  TO C;**

**DEFENDANT CAVAGNOLO'S *RAND* WARNING TO PLAINTIFF REGARDING OPPOSING SUMMARY JUDGMENT; and**

**[PROPOSED] ORDER GRANTING DEFENDANT CAVAGNOLO'S MOTION FOR SUMMARY JUDGMENT.**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users.  On October 31, 2016, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Kevin Sawyer, P-22673
San Quentin State Prison
1 Main Street
San Quentin, CA  94964
*In Pro Per*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 31, 2016, at San Francisco, California.

| C. Look | /s/ C. Look |
|---|---|
| Declarant | Signature |

SF2016400567
20910884.doc